Alfred **STEPHENSON**, Theresa Virili, Catherine McCormick, Wilfredo Alvarado, and Alvarado, Inc. t/a Freddies Groceries, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**BELL ATLANTIC CORPORATION,** and Bell Atlantic—New Jersey, Inc., Defendants.

No. Civ.A. 96–1217(JBS).

United States District Court, D. New Jersey.

Dec. 11, 1997.

Charles N. Riley, Donna Siegel Maffa, Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, P.C., Haddonfield, NJ, Samuel F. Baxter, Robert Elkin, McKool Smith, P.C., Dallas, TX, for plaintiffs.

Douglas S. Eakeley, Gavin J. Rooney, Lowenstein, Sandler, Kohl, Fisher & Boylan, P.C., Roseland, NJ, for defendants.

## OPINION

SIMANDLE, District Judge.

Plaintiffs, customers of Bell Atlantic–New Jersey, filed this putative class action on March 13, 1996, alleging violations of federal and state antitrust laws by defendants Bell Atlantic Corp. and its subsidiary, Bell Atlantic–New Jersey (collectively, "Bell Atlantic" or "BA"). Plaintiffs also bring state law claims under the New Jersey Consumer Fraud Act and for common law fraud, money had and received, breach of duty of good faith and fair dealing, and unjust enrichment.

Presently before the court is plaintiffs' motion for certification of a plaintiff class under Fed.R.Civ.P. 23(b)(3). The proposed class includes all New Jersey residential and simple business customers[1] of Bell Atlantic–New Jersey who have been charged by Bell Atlantic and who have paid for inside wire maintenance service ("IWMS") between January 1, 1987, and the present. (Pl.Br at 10.) The maintenance contracts at issue cover the wire that runs inside the walls of a customer's home or business as well as the jacks at which the wire terminates. (Id. at 2.) These contracts do not cover any telephone equipment, including the wires and cords that connect to the telephone. (Id.) Plaintiffs allege that BA unlawfully maintained a monopoly in the New Jersey IWMS market, which allowed BA to charge their customers more than would otherwise be possible in a fully competitive market. (2d Am.Compl. at ¶ 30.) Plaintiffs further allege that the "deceptive and unconscionable" marketing practices employed by BA to maintain its monopoly violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–2, and give rise to various common law causes of action. (2d Am.Compl. at ¶¶ 36–54.)

The issue raised by these motions is whether plaintiffs have satisfied the prerequisites for class certification set forth in Fed. R.Civ.P. 23. For the reasons discussed below, the court will grant plaintiffs' motion for class certification as to the state and federal antitrust claims with respect to customers who have paid for IWMS after March 13, 1992, and deny their motion with regard to the remaining state law claims.

### I. Background

BA is a company that provides telephone service to customers within the State of New Jersey. (2d Am.Compl. at ¶ 13.) Prior to 1987, BA's provision of inside wire maintenance and repair to its customers was included in the cost of regular telephone service, pursuant to regulations of the New Jersey Board of Public Utilities ("NJBPU"). (Varga Cert. at ¶ 3.) On January 1, 1987, as a result of a Federal Communications Commission ("FCC") order, BA transferred responsibility for inside wire maintenance and repair to its telephone subscribers. (Id. at ¶ 4.)

Subsequent to the FCC order, BA customers had several options as to how they would maintain and repair their inside telephone wires. They could select one of several IWMS plans offered by BA, under which BA agrees to repair inside wire in exchange for a monthly fee. (Id. at ¶ 5.) Customers who did not select an IWMS plan could pay BA for repairs on a time and materials basis, repair the wires themselves, or obtain services from other providers. The allegations of plaintiffs' Second Amended Complaint relate to whether these latter options were truly available or whether BA employed a variety of anticompetitive and fraudulent tactics to insure that the majority of its customers would select an IWMS plan. As stated in plaintiffs' Second Amended Complaint, filed November 20, 1997, these wrongful tactics allegedly included the following:

---

1. "A 'simple business customer' is a business which has inside wire that carries a single line or telephone number." (Def.Br. at 5 n. 6.) Simple business customers are to be distinguished from "complex business customers," a category which includes businesses with multiple telephone lines and which is not the subject of this lawsuit. Id.

(1) Employing a "negative option" or "default" sales scheme, which would automatically enroll customers in an IWMS plan unless they expressly notified BA that such service was not wanted;

(2) Withholding information from customers regarding the value of IWMS plans in light of the infrequency with which internal wire service is actually needed;

(3) Providing customers with incomplete and misleading descriptions of the available IWMS plans;

(4) Failing to disclose and explain services not covered by the IWMS plans;

(5) Not informing customers occupying rental properties that internal wire service might be the property owner's responsibility;

(6) Overestimating the costs that customers who chose to opt out of an IWMS plan might be compelled to bear;

(7) Establishing artificially high enrollment fees for IWMS plans, which would be waived on occasion;

(8) Juxtaposing high time and materials repair costs with the relatively low IWMS fees; and

(9) Representing that internal wire failure is a "real and present danger" from which the IWMS plans provided protection.

(2d Am.Compl. at ¶¶ 17–19.) Plaintiffs further allege that BA employed similarly deceptive tactics to enroll current and new customers in more expensive contracts for IWMS. (2d Am.Compl. at ¶ 19.) Plaintiffs' attorneys allege, in summary, that IWMS "is unnecessary, costs Bell Atlantic next to nothing to provide, and yet, has resulted in revenues to Bell Atlantic in excess of several hundred million dollars during the class period." (Pl.Br. at 1.)

In an Opinion dated March 31, 1997, the court addressed BA's motion to dismiss plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b), which asserted that the statute of limitations barred the complaint and, alternatively, that plaintiffs had failed to plead fraud with sufficient particularity. *Stephenson v. Bell Atlantic Corp.*, No. 96–1217, slip. op. at 2 (D.N.J. March 31, 1997). The court found that BA's statute of limitations

defense limited plaintiffs' antitrust claims to damages accruing by virtue of the alleged overcharges for inside wire maintenance service billed since March 13, 1992, *id.* at 5–9, and barred their remaining claims of fraud and other misconduct as to any plaintiff who was enrolled in an inside wire plan prior to March 13, 1990, *id.* at 9–10. The court further held that plaintiffs had pled their claims of fraud and other misconduct with sufficient particularity to meet the enhanced pleading standard of Fed.R.Civ.P. 9(b). *Id.* at 10–12.

The named plaintiffs, five individuals and one small business residing in New Jersey who are customers of BA and recipients of IWMS, have now moved to represent a class of all residential and simple business customers of BA in the State of New Jersey who have been charged by BA and have paid for IWMS between January 1, 1987, and the present. (Pl.Br. at 10.)

## II. *Discussion*

### A. *Class Action Principles*

■ Rule 23 of the Federal Rules of Civil Procedure sets forth four general conditions that putative class representatives must satisfy before any case is certified as a class action:

> (1) the class is so numerous that joinder of all members is impracticable ["numerosity"], (2) there are questions of law or fact common to the class ["commonality"], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"], and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy"].

Fed.R.Civ.P. 23(a). Additionally, the parties seeking certification must demonstrate that the case falls within one of the Rule 23(b) categories. Plaintiffs in this case assert compliance with Rule 23(b)(3), which permits class certification if

> the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members ["predominance"], and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ["superiori-

ty"]. The matters pertinent to the findings include: (A) defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action ["manageability"].

Fed.R.Civ.P. 23(b)(3). The plaintiffs bear the burden of proving that the proposed class action satisfies each of the requirements of Rule 23(a) and one of the prerequisites of Rule 23(b). *Baby Neal v.. Casey*, 43 F.3d 48, 55 (3d Cir.1994); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 339 (D.N.J.1997).[2]

A motion for class certification should not turn on the court's evaluation of the merits of the parties' legal or factual claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). The court may find it necessary, however, to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied. *See Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996) (citing Manual for Complex Litigation 3d § 30 11 (3d ed.1995)); *In re Ford Motor Co.*, 174 F.R.D. at 339.

The court will now address whether plaintiffs are entitled to class certification under Rule 23 for each of their causes of action, beginning with the antitrust claims in Counts 1 and 2.

---

**2.** Because a successful Rule 23(b)(3) showing by plaintiffs that common issues of law and fact predominate over individual questions necessarily implies that they have established the less stringent commonality requirement of Rule 23(a), the court will address the commonality arguments within the Rule 23(b)(3) predominance discussion. *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 626 (3d Cir.1996), *aff'd sub nom. Amchem Products, Inc. v. Windsor*, —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *In re Ford Motor Co. Ignition Switch Products Liab. Litig.*, 174 F.R.D. 332, 339 (D.N.J. 1997); *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417, 423 (D.N.M.1988) (citing 7A Charles A. Wright, Arthur R. Miller &

## B. *Antitrust Claims*

Counts 1 and 2 of the Second Amended Complaint assert claims under both federal and state antitrust laws. Specifically, plaintiffs allege that BA unlawfully maintained a monopoly in the relevant markets for IWMS or IWMS insurance in violation of Sherman Act § 2, 15 U.S.C. § 2, and the New Jersey Antitrust Act, N.J.S.A. 56:9–4.[3] (2d Am. Compl. at ¶¶ 25–35.) BA allegedly maintained their monopoly in the IWMS markets by employing a variety of "deceptive and unconscionable practices," which led to "widespread confusion" among IWMS subscribers. (*Id.* at ¶¶ 28, 29.) As a result of this confusion, current and potential competitors in the IWMS market allegedly had to engage in expensive corrective advertising campaigns, which in essence created a barrier to entry into the market and allegedly allowed BA to overcharge its customers. (*Id.* at ¶ 30.) It is this overcharge that plaintiffs seek to recover as damages. (Pl.Br. at 24–26.)

■ A brief discussion of the antitrust principles applicable to plaintiffs' claims will be helpful in providing a context for the court's disposition of the motion for class certification. To establish a claim under Section 2 of the Sherman Act, plaintiffs must demonstrate at trial BA's monopoly power in the relevant market and its willful maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *Weiss v. York Hosp.*, 745 F.2d 786, 825 (3d Cir.1984). In addition, plaintiffs

---

Mary Kay Kane, *Federal Practice & Procedure* § 1763, at 227 (2d ed.1986)). *See also* Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 4.22 (3d ed.1992).

**3.** The section of the New Jersey Antitrust Act at issue in this case was modeled after the Sherman Act, and New Jersey courts have looked to federal decisions interpreting the Sherman Act for guidance in interpreting the New Jersey statute. *Kugler v. Koscot Interplanetary, Inc.*, 120 N.J.Super. 216, 238, 293 A.2d 682 (Ch.Div.1972). Therefore, this court will not distinguish between the two statutes for purposes of this motion for class certification.

must establish a causal connection between the antitrust violation and any injury they suffered. *Van Dyk Research Corp. v. Xerox Corp.*, 631 F.2d 251, 255 (3d Cir.1980). With these legal principles in mind, the court will now determine whether plaintiffs have satisfied their burden under Fed.R.Civ.P. 23.

### 1. *Numerosity*

■ Plaintiffs estimate that there are in excess of three million New Jersey BA customers who have been charged and have paid for IWMS as a result of BA's allegedly unlawful conduct; they argue that joinder is therefore impracticable. (2d Am.Compl. at ¶ 24.) Defendants do not argue otherwise, and the numerosity requirement of Rule 23(a)(1) is thus satisfied.

### 2. *Commonality*

The Rule 23(a)(2) commonality requirement will be addressed in the discussion of "predominance" under Rule 23(b)(3), below. *See supra* n. 2.

### 3. *Typicality*

■ Rule 23(a)(3) requires that the claims of the representative parties be typical of the class. Plaintiffs' claims are generally found typical if they arise from the same course of conduct that gives rise to the claims of other class members and if their claims are based on the same legal theory. *See Baby Neal v. Casey*, 43 F.3d 48, 57–58 (3d Cir.1994); *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 122 F.R.D. 177, 181 (E.D.Pa.1988). When the same unlawful conduct was directed at or affected both the named plaintiffs and the members of the putative class, the typicality requirement is usually met, irrespective of varying fact patterns that underlie individual claims. *Baby Neal*, 43 F.3d at 58; *Ettinger*, 122 F.R.D. at 181. *See also* Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.13, at 3–76, 3–77 (3d ed.1992).

The named plaintiffs in this case (Alfred Stephenson, Theresa Virili, Catherine McCormick, Wilfredo Alvarado, and Alvarado, Inc. t/a Freddies Groceries) are all customers of BA who are currently enrolled in an IWMS plan. (Pl. Br. at 9.) Plaintiffs contend that they have satisfied the typicality prong of Rule 23(a) because both they and the putative class members suffered identical harm as a result of BA's "systematic and pervasive pattern of illegal conduct ." (Pl.Br. at 14.) BA allegedly employed the same unlawful marketing scheme with regard to all BA customers in New Jersey in order to insure that BA maintained a monopoly in the provision of IWMS. As a result of BA's conduct, all members of the putative class, including named plaintiffs, allegedly paid similar overcharges for IWMS.

In response, BA argues that plaintiffs' claims cannot be typical of the class because BA did not in fact employ a common scheme to maintain a monopoly in the IWMS market. (Def.Br. at 39.) According to BA, it did not use a so-called "negative option" to enroll customers automatically in its IWMS plans subsequent to the 1987 FCC order. (Def.Br. at 10.) BA asserts that it informed all of its customers that they would have an affirmative choice as to whether to enroll in a BA IWMS plan or to assume responsibility for inside wire maintenance themselves. (Def.Br. at 10–11.) BA also disputes plaintiffs' contention that its consultants solicited new enrollees in its IWMS plans with a uniform script. (Def.Br. at 13.) Absent a negative option or scripted solicitation, BA contends, plaintiffs' claims are necessarily atypical of those of the proposed class because each of BA's customers would have enrolled in an IWMS plan for reasons unique to that individual.

■ The possible differences in the manner in which the named plaintiffs and the putative class members enrolled in BA's IWMS plans do not preclude a finding of typicality. Plaintiffs' antitrust claims allege that BA unlawfully maintained a monopoly in the IWMS market, which allowed BA to raise the cost of its IWMS plans beyond competitive levels. In order to prevail on the merits of these claims, the named plaintiffs will have to prove the same major elements that the absent members of the class would have to prove: BA's monopoly power in the relevant market, its willful maintenance of that power, and a resulting injury. Thus, the named

plaintiffs' claims are typical of the putative class, and Rule 23(a)(3) is satisfied.

### 4. *Adequacy of Representation*

 The Third Circuit has held that the adequacy requirement involves a two–pronged inquiry: (1) the qualification and competence of plaintiffs' legal representation; and (2) whether plaintiffs' interests are antagonistic to those of the class. *Weiss,* 745 F.2d at 811. BA does not question the quality and experience of plaintiffs' counsel. Rather, they contend that the interests of one of the named plaintiffs, Catherine McCormick, are not aligned with the rest of the class because she is a paralegal employed by the attorneys who seek to represent the class. (Def.Br. at 39.) In support of this argument, BA relies on two cases, *Kramer v. Scientific Control Corp.,* 534 F.2d 1085 (3d Cir.1976), and *Charal v. Andes,* 81 F.R.D. 99 (E.D.Pa.1979). Both cases are inapposite.

In *Kramer,* the Third Circuit held that it would be ethically improper for an attorney to represent a plaintiff class of which his law firm partner was the named plaintiff. 534 F.2d at 1092. The case was before the court on a motion to disqualify class counsel under the Code of Professional Responsibility and not under the adequacy requirement of Fed. R.Civ.P. 23(a)(4). *Id.* at 1087. The court rested its holding on the conflict, or appearance of conflict, that would result where a named plaintiff stood to earn a share of attorneys' fees above and beyond his recovery as a member of the class. *Id.* at 1090. In this case, BA has not established that plaintiff McCormick stands to benefit from any attorneys fees that may eventually be awarded to her employer.

 *Charal* also involved facts distinguishable from those before the court. In *Charal,* the court found that three named plaintiffs could not adequately represent a putative class where the attorneys had selected the representatives "as an accommodation and to assure control of the class representative by the lawyer, in return for which the subordinate would bear no financial burden." 81 F.R.D. at 101. Importantly, the *Charal* class representatives had signed written agreements that expressly ceded control of the

litigation to their attorneys. *Id.* at 101–02. Furthermore, the court concluded that the interests of at least two of the class representatives might have been in direct conflict with those of the class and the other representatives. *Id.* There is no evidence of such an express agreement between McCormick and her attorneys in this case, nor are there clear conflicts between her interests and the interests of the class. Additionally, BA has not established even a hint of impropriety with regard to the other class representatives, and where there is more than one named representative, it is not necessary that all the representatives meet the Rule 23(a)(4) standard. *Federal Practice and Procedure* § 1765, at 277 (2d ed.1986). The court therefore finds that plaintiffs have satisfied the adequacy of representation requirement of Rule 23(a)(4).

### 5. *Commonality and Predominance*

 To qualify as a class under Rule 23(b)(3), plaintiffs must demonstrate that "questions of law or fact common to members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). As noted *supra,* the predominance inquiry incorporates the commonality inquiry of Rule 23(a)(2), and the court will treat them together. *Georgine,* 83 F.3d at 626. The commonality requirement is satisfied if the named plaintiffs share at least one question of fact or law in common with the grievances of the prospective class. *Baby Neal,* 43 F.3d at 56. The predominance inquiry focuses on whether the efficiencies gained in resolving these common issues together are outweighed by the individual issues presented for adjudication. *In re Prudential Ins. Co. of America,* 962 F.Supp. 450, 511 (D.N.J.1997) (citing *Newberg on Class Actions,* § 4.25, at 4–81 to 4–86). Even a few common issues will satisfy the predominance inquiry where the resolution of these issues will greatly advance the litigation. *Id* . (citing *In re School Asbestos Litig.,* 789 F.2d 996, 1010 (3d Cir.1986)). *See also In re Ford Motor Co.,* 174 F.R.D. at 340.

 There can be no doubt that plaintiffs' antitrust claims present numerous common questions of both law and fact requiring

the court's adjudication. Plaintiffs cite the following issues that require proof common to the class: (1) the definition of the relevant geographic and product markets; (2) whether BA had monopoly power in that market; (3) whether that power was willfully maintained by exclusionary means; (4) the effect of BA's conduct on interstate commerce; and (5) whether BA's allegedly improper sales and contracting techniques created barriers to entry into the market. (Pl.Br. at 11.) None of these issues is unique to the individual members of the class, and their resolution on a class–wide basis will clearly serve interests of efficiency.

BA argues that despite these common issues, individual questions predominate with respect to plaintiffs' antitrust claims. In support of this argument, BA again focuses on its contention that its IWMS marketing plan involved neither negative options nor scripted solicitations. (Def.Br. at 25.) BA claims that absent these devices, which would have applied to all members of the putative class, individual factual issues abound and preclude a finding of predominance. (*Id.*)

BA asks the court to follow what BA considers an "emerging line of caselaw refusing to grant class certification in these 'inside wire' putative class actions where the defendant phone company did not use a negative option." (Def.Supp.Br. of Nov. 20, 1997, at 3.) The cases cited by BA, most of which are unpublished federal and state trial court decisions, are not binding authority for this court. *See Converse v. Ameritech Corp.*, No. 5:95–CV–141 (W.D.Mich. Sept. 12, 1997); *Myers v. Soutwestern Bell Tel. Co.*, No. CIV–95–827–C (W.D.Okl. Jan. 9, 1997). More importantly, the court does not find the reasoning of these cases persuasive.

The plaintiffs in *Converse* and *Myers* also alleged that the defendant phone companies had marketed IWMS in a manner that was both fraudulent and in violation of antitrust laws. *Converse*, slip. op. at 3–4; *Myers*, slip. op. at 2. Both courts held that the plaintiffs' failure to demonstrate defendants' use of either a negative option or standardized written and oral solicitations was fatal to their motions for class certification as to all claims. As to the antitrust claims, the courts rea-

soned that the alleged negative option and fraudulent solicitations were central to proof of defendants' wilful maintenance of monopoly power by exclusionary means. *Converse*, slip. op. at 18; *Myers*, slip. op. at 15. Absent a negative option, the courts concluded, this proof would depend on the lawfulness of the many written and oral solicitations made to the individual putative class members. *Converse*, slip. op. at 18; *Myers*, slip. op. at 15. Because there were material variations among these representations, individual issues would predominate, precluding class certification under Fed.R.Civ.P. 23(b)(3). *Converse*, slip. op. at 18, *Myers*, slip. op. at 15.

On the issue of predominance of the class members' antitrust claims, this court does not find this reasoning persuasive because it fails to distinguish adequately the antitrust claims from the fraud claims. As discussed *supra*, the essence of plaintiffs' antitrust claims is that BA unlawfully maintained a monopoly in IWMS by employing a negative option and a deceptive marketing scheme. The resulting consumer confusion allegedly created a barrier to entry into the IWMS market and allowed BA to charge monopolistic prices. As BA stated in its brief, "It is only if plaintiffs can prove that the alleged overcharge resulted from the preclusion of competition than [sic] they can establish antitrust standing, and thus recover antitrust damages from Bell Atlantic." (Def.Br. at 35.) If plaintiffs meet this burden, then anyone who purchased IWMS from BA during the period over which BA charged such prices was injured. *Davis v. Southern Bell Tel. & Tel. Co.*, 1993 WL 593999, at *7 (S.D.Fl. Dec. 23, 1993). Thus, in contrast to plaintiffs' fraud claims, the fact that an individual class member was not subjected to a negative option or fraudulent representation would not preclude his or her recovery under antitrust law.

Clearly the absence of a negative option would make it more difficult for plaintiffs to prevail on the merits, and material variations in the written and oral representations made to BA's customers would render plaintiffs' proof more complex. But the unlikelihood of plaintiffs' success on the merits and the com-

plexity of their proofs do not concern the court on this motion for class certification. What does concern the court is whether the manner of proof will vary substantially from class member to class member. Because each member must make the same showing of anticompetitive conduct and monopolistic pricing in order to prevail on her antitrust claims, the manner of proof will not vary, and individual issues of fact and law do not predominate.

BA makes an additional argument in attacking plaintiffs' ability to establish antitrust injury by proof common to the class. BA argues that because it consistently informed its customers that it was not the sole provider of IWMS and that customers could even perform inside wire repairs themselves, plaintiffs cannot establish antitrust injury. (Def.Br. at 36.) This argument is not appropriate on this motion for class certification since it again attacks plaintiffs' ability to prove antitrust injury, not the manner in which plaintiffs will prove it. The former inquiry is directed at the merits of plaintiffs' antitrust claims and is more appropriately raised on a motion for summary judgment.

BA finally argues that antitrust damages cannot be calculated on a class-wide basis and will thus overwhelm any issues common to the class. (Def.Br. at 37.) Plaintiffs' alleged damages are the overcharges they paid as a result of the noncompetitive prices BA set for its IWMS plans. Plaintiffs intend to calculate damages on a class-wide basis by employing the "competitive benchmark" method. (Pl.Br. at 25–26.) This method involves the use of econometric techniques to determine the IWMS prices that would have prevailed in a fully competitive market. According to plaintiffs, once the competitive prices are established, calculating damages on an individual basis becomes mechanical and thus will not overwhelm the various issues common to their antitrust claims.

BA does not challenge the mechanical nature of the benchmark method of calculating damages; rather, BA contends that the calculation of damages will require more than the simple arithmetic of subtracting the IWMS fees that would have been paid in a competitive market from those actually paid.

BA has raised the affirmative defense of set-off and asserts that this defense will require a calculation of the value of inside wire service actually received by each member of the putative class. (Def.Br. at 37.) As this value will vary from class member to class member, BA argues, "there is no practical means to resolve this issue on a common basis." (Id.)

There are several problems with BA's argument, and first among them is BA's failure to provide any legal basis for its set-off defense. BA cites an unpublished Order from the Eastern District of Tennessee for its only support. *Stinnett v. BellSouth Telecomm., Inc.*, No. CIV–2–92–207, slip. op. (E.D.Tenn. Sept. 20, 1993). The *Stinnett* Order provides little in the way of factual background or legal analysis and is thus not persuasive authority for this court. Furthermore, *Stinnett* is distinguishable from the case currently before the court. The *Stinnett* plaintiffs were apparently suing defendant phone company for rescission of IWMS contracts and a return of the money they had paid under the contracts. *Stinnett*, slip op. at 5. Defendant responded that if plaintiffs prevailed, they would be unjustly enriched to the extent they actually received services pursuant to their IWMS contracts. *Id.* The court found that determining the value of services actually received by each class member would render the case unmanageable as a class action. *Id.* at 6. The court therefore modified the class to exclude all persons who had received IWMS work from defendants. *Id.* The *Stinnett* court's analysis does not support BA's position in this case because the *Stinnett* plaintiffs were seeking a remedy in contract, not under federal and state antitrust laws. This court will not deny plaintiffs' motion for class certification on the basis of a set-off defense for which BA has not provided a supporting legal argument. The court therefore finds that common questions of fact and law predominate over those questions unique to individual class members.

### 6. *Superiority*

■ Rule 23(b)(3) also requires that the class action "be superior to other available methods for the fair and efficient adjudica-

tion of the controversy." Fed.R.Civ.P. 23(b)(3). Plaintiffs argue that the superiority requirement is met because there is no alternative method of adjudication that would be fair and efficient. (Pl.Br. at 37.) Since most of the putative class members allegedly suffered damages in such small amounts, it would be economically infeasible for them to proceed individually. BA has not argued that there is an alternative means of adjudicating these claims, and the court is not aware of any. Plaintiffs have therefore met the superiority requirement of Rule 23(b)(3). *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809, 105 S.Ct. 2965, 2973, 86 L.Ed.2d 628 (1985) (noting that class actions allow plaintiffs to pool claims that would be uneconomical to litigate individually, providing small claimants with their only opportunity for a day in court); *In re Ford Motor Co.,* 174 F.R.D. at 351 (same); *Ettinger,* 122 F.R.D. at 182 (superiority requirement met in securities fraud suit where large number of investors may have been harmed, but individual damages were not great).

### 7. *The Class*

Having met their burden of establishing each of the requirements of Rule 23(a) and (b)(3), plaintiffs are entitled to class certifica-

tion with regard to their state and federal antitrust claims. Plaintiffs seek to certify a class of all residential and simple business customers of Bell Atlantic–New Jersey who have been charged by Bell Atlantic and who have paid for IWMS between January 1, 1987, and today's date. (Pl.Br. at 10.) This class would be too broad in scope, in light of the court's Opinion of March 31, 1997, which limited plaintiffs' antitrust claims to damages accruing by virtue of the alleged overcharges for inside wire maintenance billed since March 13, 1992. *Stephenson,* slip. op. at 8. Plaintiffs' class as to the antitrust claims raised in Counts 1 and 2 will therefore comprise only those residential and simple business customers who have been billed by Bell Atlantic–New Jersey for IWMS since March 13, 1992.

### C. *Statutory and Common Law Fraud*

■ The court must next evaluate plaintiffs' class certification motion with respect to their claims of statutory and common law fraud. While plaintiffs have demonstrated that class certification is proper for their federal and state antitrust claims, it does not necessarily follow that their fraud claims are also amenable to class treatment, and further analysis is required.[4] Plaintiffs' statutory

---

4. Differential treatment of claims is permitted by Rule 23(c)(4), Fed.R.Civ.P., which states:

 When appropriate (A) an action may be brought or maintained as a class with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

 The theory of Rule 23(c)(4)(A) "is that the advantages and economies of adjudicating issues that are common to the entire class on a representative basis should be secured even though other issues in the case may have to be litigated separately by each class member ." 7B Charles Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1790, at 271 (2d ed.1986). Recently, courts have been cautioned against the class certification of common issues within a single claim by splitting the elements of a claim into class and individual components. *See In re Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293 (7th Cir.), *cert. denied sub nom. Grady v. Rhone–Poulenc Rorer, Inc.,* 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995) (order for nationwide class certification of negligence issues relating to HIV contamination of defendant's products, leaving causation and damages

to individual case determinations, was reversed); *Castano v. American Tobacco Co. .,* 84 F.3d 734 (5th Cir.1996) (order for class certification of certain core tobacco liability issues on nationwide basis, to be followed by individual trials on comparative negligence and individualized harm, was reversed). The Supreme Court, subsequent to *Rhone–Poulenc* and *Castano,* continues to recognize that a class action may properly contain both common and uncommon issues so long as the uncommon questions are not significant compared with the magnitude and weight of the common issues. *Amchem Prods., Inc. v. Windsor,* —— U.S. ——, ——, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997), *aff'g Georgine v. Amchem Prods., Inc.,* 83 F.3d 610 (3d Cir.1996) (finding nationwide class certification inappropriate where disparities among circumstances of individual members undermines the common issues of fact concerning exposures to various asbestos–containing products). None of these cases suggests that class certification of all asserted causes of action is an all–or–nothing proposition. Moreover, a class certification which does not split the elements of a single cause of action into classwide and individual issues would not run afoul of *Rhone–Poulenc* or *Castano.*

claim arises under the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8–2, which BA allegedly violated by engaging "in affirmative acts of deception, fraud and misrepresentation" and by "omitting, suppressing and concealing material facts from customers in connection with the marketing and sale of IWMS" in New Jersey. (2d Am. Compl., Count 3 at ¶¶ 38, 39.) Under the CFA, private plaintiffs must also demonstrate that they "suffered an ascertainable loss ... as a result of the unlawful conduct." *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 473, 541 A.2d 1063 (1988). In other words, there must be a causal relationship between plaintiffs' "ascertainable loss" and defendant's unlawful conduct. *Gross v. Johnson & Johnson–Merck Consumer Pharmaceuticals Co.*, 303 N.J.Super. 336, 345, 696 A.2d 793 (Law Div.1997); *Miller v. American Family Publishers*, 284 N.J.Super. 67, 77, 663 A.2d 643 (Ch.Div.1995).

■ Additionally, in Count 4 of the Second Amended Complaint plaintiffs allege a common law fraud claim. (2d Am.Compl. at ¶¶ 41–43.) The elements of common law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350 (1997). Because the elements of these claims are sufficiently similar for purposes of this motion for class certification, the court will address them together.

### 1. Numerosity and Adequacy

■ The arguments in support of the numerosity and adequacy requirements of Rule 23(a) with respect to plaintiffs' antitrust claims are equally applicable to their CFA and common law fraud claims. The court therefore finds that these requirements are satisfied for the reasons discussed above.

### 2. Commonality and Predominance

The court's discussion of the commonality and predominance requirements with respect to plaintiffs' antitrust claims does not trans-

fer quite so easily to their CFA and common law fraud claims. The factual and legal arguments that will support a claim under the antitrust laws will not necessarily support a claim of fraud. The focus of plaintiffs' CFA and fraud claims will be on whether BA misrepresented and omitted material information in marketing IWMS and whether any alleged misrepresentations and omissions had an impact on the putative class members. These issues are less susceptible to class-wide proof than are antitrust issues, in which the focus is on BA's market power and the impact its monopolistic conduct had on the prices charged to all putative class members. The court must therefore closely scrutinize plaintiffs' arguments in support of their motion for class certification of their CFA and fraud claims to insure that any efficiencies gained by class resolution of common issues are not outweighed by the individual issues presented for adjudication. *In re Prudential Ins. Co. of Am.*, 962 F.Supp. at 511.

The focus of plaintiffs' CFA and fraud claims will be on the allegedly deceptive manner in which BA marketed IWMS to the putative class members. The alleged deception involved a series of oral and written misrepresentations and omissions of material fact. (2d Am.Compl. at ¶¶ 37, 42.) Proving such allegations in the class action context poses special problems. As one district court noted, "In any potential class action based on fraudulent misrepresentations, there is a significant risk that individual issues will overwhelm those common to the class." *Davis v. Southern Bell Tel. & Tel. Co.*, 158 F.R.D. 173, 175 (S.D.Fl.1994). The Advisory Committee on the 1966 Amendments to Rule 23 also recognized this risk:

[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for a separate determination of damages suffered by individuals within the class. On the other hand, although having a common core, a fraud case may be unsuited for treatment as a class action if there was a material variation in the representations made or in

the kinds or degrees of reliance by the persons to whom they were addressed. *Rules Advisory Committee Notes to 1966 Amendments to Rule 23,* 29 F.R.D. 69, 103 (1966). This risk is amplified in fraud cases involving oral communications, which by their very nature tend to be individualized and not suitable for class treatment. *See Eisenberg v. Gagnon,* 766 F.2d 770, 786–87 (3d Cir.1985) (noting that a fraud case premised on oral representations presents a greater obstacle to class treatment than one based on written materials); *Curley v. Cumberland Farms Dairy, Inc.,* 728 F.Supp. 1123, 1132 (D.N.J.1989); *Glick v. E.F. Hutton & Co.,* 106 F.R.D. 446, 449 (E.D.Pa.1985); *see also* 7B *Federal Practice and Procedure* § 1781, at 40–41, & § 1782, at 56 (noting the unlikelihood of common questions predominating in consumer fraud cases premised on oral misrepresentations). To demonstrate the requisite predominance of common issues of fact and law in a case such as this, plaintiffs must identify a small core of misrepresentations and omissions made to all, or most, of the class members. *Davis,* 158 F.R.D. at 175. Otherwise, individual questions of whether and when certain statements were made to members of the class would surely predominate and render the class action an impractical vehicle for conducting this litigation.

Plaintiffs claim that common issues do in fact predominate with respect to their CFA and fraud claims because BA made the same core of misrepresentations to all, or most, class members in essentially the same way on each presentation. (Pl.Br. at 29)[5] Plaintiffs must thus demonstrate the following: (1) a similarity among BA's various written IWMS solicitations; (2) a similarity among the oral representations made to BA's· customers; and (3) a similarity between the oral

representations and written solicitations. *Myers v. Southwestern Bell Tel. Co.,* No. CIV–95–827–C, slip. op. at 10 (W.D .Okla. Jan. 9, 1997); *Davis,* 158 F.R.D. at 175.

### a. *Written Solicitations*

With regard to BA's written solicitations, plaintiffs assert that the following misrepresentations or deceptive statements were present in all of them: (1) inside wire failure was a serious danger; (2) the juxtaposition of low monthly service costs and relatively high time and materials charges; and (3) inadequate definition of inside wire or the scope of IWMS coverage. (Pl.Br. at 29–30.) Additionally, plaintiffs assert that BA in its written solicitations always omitted statistics on the frequency with which inside wire repair is actually needed. (*Id.* at 29.) The court is not convinced of the consistency with which some of these misrepresentations were made.

Plaintiffs claim that "*all* [written] solicitations either stated or implied that inside wire failure was a serious danger." (Pl.Br. at 29 (emphasis added).) In support, they cite three pieces of evidence, including the deposition testimony of BA's product manager responsible for inside wire, Kenneth Varga, and two actual solicitations.[6] The Varga deposition testimony establishes nothing, for plaintiffs have provided only one page taken out of context, so that the court cannot determine to what he was referring when he said that the "promotional pieces" were designed to inform BA's customers that by subscribing to an IWMS plan they could avoid the danger, in the event of inside wire failure, of having to pay a BA technician for repairs. (Elkin Dec., Ex. 1, Varga Dep. at 111.) The two solicitations do, however, provide some support for plaintiffs' proposition, (Elkin Dec., Exs. 2, 8), but they are apparently two among many. (*See* Pl.Br. at 6, 9 (plaintiffs

---

**5.** In their brief, plaintiffs separately address the commonality and predominance requirements of Rule 23(a) and (b)(3). In addressing the commonality requirement, plaintiffs argue that commonality exists because each member of the putative class must demonstrate that BA violated the CFA and committed fraud. (Pl.Br. at 12.) This reasoning is clearly insufficient, for the fact that all putative class members seek to hold BA liable under the·same legal theory does not establish commonality; plaintiffs must show that specific legal and factual arguments that will sup-

port liability are common to the class. The court will not deny class certification on this basis alone, however, for plaintiffs do address the commonality requirement with adequate specificity within their predominance discussion.

**6.** Plaintiffs actually cite four pieces of evidence, but one is a script for an oral solicitation that clearly has no bearing on the consistency of the misrepresentations in the written solicitations. (Pl.Br. at 29; Elkin Dec., Ex. 16.)

allege that BA "repeatedly and continuously" sent out "waves of the same basic deceptive and coercive written solicitations").) Plaintiffs have not shown the court how it is to conclude, based on these two discrete mailings, that "all" other written solicitations included the same misrepresentations. There is no explanation as to why these two documents are representative of the "waves" of written materials sent out to BA's customers.

Plaintiffs further assert that all written solicitations juxtaposed the low cost of enrolling in an IWMS plan and the alternative of high time and materials charges. (Pl.Br. at 29–30.) Plaintiffs direct the court to numerous written solicitations that support their assertion. (Elkin Dec., Exs. 2, 8, 4A.)[7] Again, it is difficult, based on these solicitations, to determine whether all other written solicitations included the same alleged misrepresentations.

With respect to their allegation that none of the solicitations adequately defined inside wire or the scope of the IWMS plans, plaintiffs cite numerous written materials. (Pl.Br. at 30.) Plaintiffs do not make clear what additional information would have rendered these definitions adequate, but they do state that the most "egregious" omission was BA's failure to inform its customers that the IWMS plans do not cover pre-existing inside wire problems. (Pl.Br. at 6.) Some of the written materials provided by plaintiffs do in fact fail to provide this information. (Elkin Dec., Exs. 4, 8, 9.) Others, however, explicitly notify customers that the plans do not cover "wire or jack problems which occur prior to the start of plan coverage." (Elkin Dec., Exs. 15, 24; Prickitt Dec., Exs. B, D, F, G, H, I.) Based on this record, the court cannot conclude that all, or even most, of BA's IWMS customers received written solicitations that inadequately defined the scope of IWMS coverage.

Finally, plaintiffs allege that none of the written solicitations stated the frequency with which inside wire repair is actually needed. The BA solicitations before the court support this allegation, and BA has effectively conceded its truth. (Def.Br. at

37–38.) In fact, BA argues that this is the only misrepresentation or omission common to the putative class.

In the Second Amended Complaint, plaintiffs make allegations of additional fraudulent misstatements and omissions which they did not address in the portion of their brief dedicated to the Rule 23(b)(3) predominance inquiry. Some of these allegations lend further support to the conclusion that plaintiffs cannot establish that all of BA's written solicitations included the same core of misrepresentations and omissions. For example, plaintiffs allege that BA did not explain to its customers occupying rental properties that their landlords might bear responsibility for inside wire repair. (2d Am.Compl. at ¶ 18.) A review of the evidence reveals that some of the written solicitations clearly did not include this information, (Elkin Dec., Ex. 2), but others did, (Elkin Dec., Ex. 15A).

■■■ The above record simply does not demonstrate that BA made the same core of written misrepresentations or omissions to all, or most, of the putative class members. It is worth repeating that on this motion for class certification plaintiffs bear the burden of demonstrating that all of the Rule 23 prerequisites have been satisfied. *See Baby Neal,* 43 F.3d 48, 55 (3d Cir.1994); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A *Federal Practice and Procedure,* § 1759, at 102. Yet even where the record seems to support the conclusion that certain written materials included the same misrepresentations, plaintiffs fail to provide the court with enough information to conclude that all, or most, of the subscribers to one of BA's IWMS plans received and relied on these same solicitations.

### b. *Oral Representations*

Plaintiffs do not dispute BA's assertion that the majority of IWMS subscribers enrolled in a plan as a result of conversations with BA consultants. (Def.Br. at 26 n. 15, 28, 31.) Plaintiffs argue that the oral solicitations were both consistent among them-

---

7. Plaintiffs again improperly cite materials related to oral solicitations as evidence that all written materials included the same misrepresentations. (Elkin Dec., Exs. 9, 10, 32.)

selves and with the written solicitations discussed above. The court does not agree.

When discussing BA's oral solicitations, plaintiffs seem to abandon one of the allegedly core misrepresentations: that inside wire failure is a serious danger. (*See* Pl.Br. at 31–32.) [8] Nor do plaintiffs provide any support for another allegedly core misrepresentation: the failure to inform customers that preexisting inside wire problems are not covered by any IWMS plan. The evidence upon which plaintiffs rely to demonstrate the consistency among the oral representations made to millions of BA customers about IWMS are scripts prepared by BA for an outside marketing vendor and a manual employed by BA's own consultants called the "Ready Reference." (Pl .Br. at 31.) The Ready Reference clearly indicates, however, that the IWMS plans do not cover pre–existing conditions. (Boyer Cert., Ex. A .) It also describes what the plans do cover: inside wiring and jacks. (*Id.*)

Plaintiffs are thus left with two remaining core misrepresentations: (1) the juxtaposition of low IWMS fees and high time and material costs and (2) the failure to disclose the frequency with which inside wire repair is actually needed. With regard to the former misrepresentation, there is some evidence that the materials upon which the outside vendors and BA consultants relied did juxtapose the low monthly fees against the potentially high time and materials charges. (Elkin Dec., Exs. 10, 16, 20.) Other evidence is not so clear. (Elkin Dec., Exs. 9, 32.) More importantly, only the outside vendors actually employed verbatim scripts when communicating with BA's customers. (Def.Br. at 31.) BA's own consultants normally would not inform the customer of potential time and materials charges unless the customer declined to subscribe to an IWMS plan. (Boyer Cert. at ¶ 10; Fieldhouse Cert. at ¶ 7.) Without the benefit of verbatim scripts, the court cannot conclude that each BA consultant would always juxtapose the IWMS plan rates with the potentially high time and materials charges. The nature of oral communications does not lend itself to such consistency, especially when the communications were made by different consultants to millions of people over many years' time. (Def.Br. at 20.) *See Myers v. Southwestern Bell Tel. Co.*, No. CIV–95–827–C, slip. op. at 10 (W.D.Okla. Jan. 9, 1997) (denying class certification on similar facts where plaintiffs could not establish that oral presentations were scripted). *But see In re Prudential Ins. Co. of Am.*, 962 F.Supp. 450, 513–16 (D.N.J.1997) (finding predominance of common issues in oral misrepresentation case where it was stipulated that defendant insurance company trained its agents uniformly and required that they use uniform sales materials).

■ Defendants do not contend that their consultants were instructed to provide customers with statistics regarding the frequency of repairs. Only this omission, however, is common to the putative class. This single omission does not provide sufficient support for the assertion that BA made the same core of misrepresentations to all, or most, members of the putative class. Plaintiffs have therefore not demonstrated the requisite common core of both oral and written misrepresentations that would allow a finding that common issues of fact and law will predominate with respect to plaintiffs' CFA and fraud claims. Absent such a showing, issues of whether and when individual members of the putative class received certain alleged misrepresentations would overwhelm those issues common to the class.

■ While the disparate nature of the BA's written and oral representations to consumers persuades this court that plaintiffs have failed to demonstrate commonality and predominance of their fraud–related claims, these differences are compounded by the further issue of plaintiffs' need, for purposes of class certification, to proffer a common theo-

---

8. In their discussion of the written solicitations, plaintiffs did cite a script prepared by BA and employed by outside marketing vendors in support of this proposition. (Pl.Br. at 29 n. 107.) This lone script falls short of establishing the requisite harmony among the many oral representations made for two reasons: (1) it does not seem to state or imply that inside wire failure is a serious danger, (Elkin Dec., Ex. 16); and (2) the same script was not employed by BA's own consultants who had the majority of contact with BA's customers, (Def.Br. at 20).

ry of reliance upon the alleged misrepresentations. Individual issues seem to predominate as to whether disclosure of the allegedly omitted or misrepresented information would have altered customers' decisions to subscribe to the IWMS plans. Whether under the Consumer Fraud Act or common law fraud, in the consumer context the plaintiff must show that misrepresentations or non-disclosures "induced the purchaser to buy," *Strawn v. Canuso*, 140 N.J. 43, 61, 657 A.2d 420 (1995), or induced the purchaser to buy the product where no purchase would have occurred if the deceptive packaging had not been present, *Maguire v. Sandy Mac, Inc.*, 138 F.R.D. 444, 451 (D.N.J.1991), *vacated on other grounds*, 145 F.R.D. 50 (D.N.J.1992). *See also Gross v. Johnson & Johnson–Merk Consumer Pharmaceuticals*, 303 N.J.Super. 336, 346–50, 696 A.2d 793 (Law Div.1997) (denying motion to certify plaintiff class asserting claims under the CFA and of common law fraud in false advertising case where individual issues of reliance and causation would predominate).

In the present case, the named plaintiffs themselves have offered testimony showing the individual nature of the reliance issues. For example, even if BA uniformly failed to advise that wire repairs are simple, as alleged in the Second Amended Complaint, (2d Am.Compl. at ¶ 18(e)), plaintiffs McCormick and Stephenson both testified they are not able to make such wire repairs themselves. (Rooney Cert., Ex. B, Stephenson Dep. at 125–27, & Ex. C, McCormick Dep. at 30.) It would follow that this particular misrepresentation could not have induced McCormick and Stephenson to select an IWMS plan. Similarly, if plaintiff Virili already knew that the need for this service is "low," as she testified, (Rooney Cert., Ex. A, Virili Dep. at 130–31), she could not have relied upon BA's alleged omission of this fact. Thus, the issue of whether the alleged fraudulent misrepresentations made a difference in causing harm will likely require a degree of individualized fact–finding that overtakes the common aspects of the reliance and causation issues.

3. *Typicality*

▮ Plaintiffs have also failed to meet their burden of establishing that their CFA and common law fraud claims are typical of the putative class. With one exception, plaintiffs have failed to provide any information regarding when and under what circumstances they subscribed to IWMS. (*See* Moffa Cert., Exs. A, B, C, D, & E.) None of the named plaintiffs even alleges receipt of the fraudulent written or oral solicitations. (*See id.*) In fact, each of the named plaintiffs has demonstrated in deposition testimony a lack of knowledge regarding the circumstances under which he or she subscribed to a BA IWMS plan. (Rooney Cert., Exs. A at 27, B at 27–28, C at 38–39, & D at 50.) This failure (or inability) of the named plaintiffs to provide some information regarding the basis of their CFA and fraud claims makes it difficult for the court to determine whether their claims are indeed typical of the class. *See Levine v. Berg*, 79 F.R.D. 95, 97 (S.D.N.Y.1978)

▮ Plaintiffs assert that their claims are typical of the class because, as subscribers to IWMS and customers of BA, they were necessarily subjected to the same illegal scheme and injured in the same manner as all members of the putative class. (Pl.Br. at 14–17.) Plaintiffs argue that their claims are typical of the class members' claims because BA "failed to disclose material facts that would affect all customers' decisions to contract for IWMS during all phases of IWMS sales." (Pl.Br. at 15 (quoting *Sollenbarger*, 121 F.R.D. at 430–31).) In other words, they argue, one can infer typicality from their mere status as IWMS subscribers and BA customers. This argument has merit with regard to their antitrust claims, where the relationship between BA's alleged monopolistic conduct and the resulting injury to competition and consumer overcharges does not vary from class member to class member. Plaintiffs' CFA and fraud claims, however, depend on the manner in which they subscribed to IWMS and, in particular, on when they subscribed and what information they received and relied upon at the time of subscription, whether oral or written. Where BA dispensed different information on different occasions, and where none of the named class representatives is able to provide any testimony regarding the circumstances under

which they decided to subscribe to IWMS, the linchpin of typicality is absent for these fraud claims. Without this information, the court has no basis for making a determination as to the typicality of plaintiffs' CFA and fraud claims. The typicality inquiry requires the court to assess the "individual circumstances" of the named plaintiffs to determine whether they present those common issues of fact that justify class treatment. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir.1992). Having failed to demonstrate the amenability of these individual issues to classwide adjudication, plaintiffs have not met their burden under Fed.R.Civ.P. 23(a)(3).

### D. *Plaintiffs' Remaining State Law Claims*

Plaintiffs also assert the following state law claims: money had and received; breach of duty of good faith and fair dealing; and unjust enrichment. Plaintiffs do not make a separate argument for class certification with regard to these claims. Apparently, the basis of these claims is the same alleged misrepresentations and omissions that form the basis of plaintiffs' CFA and fraud claims. Therefore, the court finds that plaintiffs have not established either the typicality of these claims or that common issues of fact and law will predominate over individual issues. As a result, plaintiffs motion for class certification is denied with respect to these claims.

### III. *Conclusion*

For the above reasons, the court will grant plaintiffs' motion for class certification with regard to their antitrust claims and deny their motion as to the remaining causes of action. The issue of notice to the members of this class will be addressed upon motion for court approval of the appropriate form and procedures for notice to the class pursuant to Rule 23(c)(2), Fed.R.Civ.P., which shall be filed within thirty (30) days hereof.

The accompanying Order for class certification is entered.

### ORDER

This matter having come before the court upon the plaintiffs' motion for class certification; and the court having considered the submissions of the parties; and for the reasons stated in the Opinion of today's date;

IT IS this 11th day of December 1997 hereby

ORDERED that plaintiffs' motion for class certification of their state and federal antitrust claims in Counts 1 and 2 of the Second Amended Complaint be, and hereby is, *GRANTED;* and it is

FURTHER ORDERED that for these state and federal antitrust claims the court hereby CERTIFIES the following class:

> **All residential and simple business customers of Bell Atlantic–New Jersey, Inc. in the State of New Jersey who have been charged by Bell Atlantic and who have paid for inside wire maintenance service ("IWMS") since March 13, 1992;** and it is

FURTHER ORDERED that plaintiffs' motion for class certification of their remaining state law claims be, and hereby is, *DENIED;* and it is

FURTHER ORDERED that plaintiffs' class counsel shall file their motion for court approval of the appropriate form and procedures for notice to the members of the plaintiff class, pursuant to Fed.R.Civ.P. 23(c)(2), within thirty (30) days hereof.