**JERRY ENTERPRISES OF GLOUCESTER COUNTY, INC., Tagco, Inc., Jack N. Bill's, Inc., and Chefs International, Inc., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**ALLIED BEVERAGE GROUP, L.L.C., The Baxter Group, Inc., Majestic Wine & Spirits, Flagstaff Distributors, Banner Distributors, Joseph H. Reinfeld Distributors, F & A Distributing Co., Inc., Merchants' Wine & Liquor Co., Fedway Associates, Inc., Federal Wine & Liquor Co., Perrone Wine & Spirits, Inc. d/b/a Gateway–Perrone Distributors, Capital Wine & Spirits Co. d/b/a Jersey National Capitol Wine & Liquor, Co., The Jaydor Corporation, J & J Distributing Co., International Vintners, Dorchester, Inc., Hoffman Import and Distribution, R & R Marketing, L.L.C., Reitman Industries, and Royal Distributors and Importers, Inc., Defendants.**

**Robert D. DUBIN d/b/a Int Lands II, Inc. t/a Caesar's Lounge & Liquors, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**ALLIED BEVERAGE GROUP, L.L.C., The Baxter Group, Inc., Majestic Wine & Spirits, Flagstaff Distributors, Banner Distributors, Joseph H. Reinfeld Distributors, F & A Distributing Co., Inc., Merchants' Wine & Liquor Co., Fedway Associates, Inc., Federal Wine & Liquor Co., Perrone Wine & Spirits, Inc. d/b/a Gateway–Perrone Distributors, Capital Wine & Spirits Co. d/b/a Jersey National Capitol Wine & Liquor, Co., The Jaydor Corporation, J & J Distributing Co., International Vintners, Dorchester, Inc., Hoffman Import and Distribution, R & R Marketing, L.L.C., Reitman Industries, and Royal Distributors and Importers, Inc., Defendants.**

Nos. Civ.A. 96–2347, 97–282.

United States District Court,
D. New Jersey.

Feb. 23, 1998.

Robert A. Hoffman, Barrack, Rodos & Bacine, Haddonfield, NJ, Leonard Barrack, Steven A. Asher, Anthony J. Bolognese, Barrack, Rodos & Bacine, Philadelphia, PA, Allen D. Black, Donald L. Perelman, Fine, Kaplan & Black, Philadelphia, PA, Joseph Goldberg, Freedman, Boyd, Daniels, Hollander, Guttman & Goldberg, P.A., Albuquerque, NM, William J. Bryers, Cherry Hill, NJ, Jay S. Cohen, Law Offices of Jay S. Cohen, Lower Gwynedd, PA, John Philip McCarthy, Law Offices of John P. McCarthy, Lower Gwynedd, PA, Philip A. Steinberg, Bala Cynwyd, PA, for plaintiffs, Jerry Enterprises of Gloucester County, Inc., Tagco, Inc., Jack N. Bill's, Inc., Chefs International, Inc., and Robert D. Dubin.

William J. O'Shaughnessy, Harvey C. Kaish, McCarter & English Newark, NJ, for defendants, Fedway Associates, Inc., Federal Wine & Liquor Co., Perrone Wine & Spirits, Inc., and Capital Wine & Spirits Co.

Justin P. Walder, Thomas J. Spies, Walder, Sondak & Brogan, P.A., Roseland, NJ, for defendants, The Baxter Group, Inc., Majestic Wine & Spirits, Flagstaff Distributors, Banner Distributors, and Joseph H. Reinfeld Distributors.

Edward G. D'Alessandro, D'Alessandro & Jacovino, Florham Park, NJ, for defendants, F & A Distributing Co., Inc., Merchants' Wine & Liquor Co., R & R Marketing, L.L.C., Allied Beverage Group, L.L.C., and Royal Distributors & Importers, Inc.

Richard K. Coplon, Hellring, Lindeman, Goldstein & Siegal, Newark, NJ, for defendants, The Jaydor Corporation, J & J Distributing Co., International Vintners, Dorchester, Inc., and Hoffman Import and Distribution.

Douglas S. Eakeley, Lowenstein, Sandler, Kohl, Fisher & Boylan, P.C., Roseland, NJ, for defendants, R & R Marketing, L.L.C. and Reitman Industries.

Andrew E. Anselmi, McCusker, Anselmi, Rosen & Carvelli, Chatham, NJ, for defen-

dants, R & R Marketing, L.L.C. and Reitman Industries.

## OPINION

ORLOFSKY, District Judge.

In this action alleging that distributors of distilled alcoholic beverages conspired to fix wholesale prices on such goods throughout the state of New Jersey in violation of the Sherman Act and the New Jersey Antitrust Act, presently before the Court is Plaintiffs' motion for class certification. Defendants have not challenged the maintenance of this action as a class action on the numerosity, commonality, and typicality prongs of Rule 23(a) of the Federal Rules of Civil Procedure. Nor do Defendants dispute that the action may be maintained as a class action under Rule 23(b)(3), that is, that questions of law and fact common to the members of the class predominate over questions affecting individual members of the class, and that a class action is superior to other methods of adjudicating the controversy.

██ Instead, Defendants have generated much heat and little light in a strenuous effort to demonstrate that the proposed class representatives will not fairly and adequately protect the interests of the class. In opposing Plaintiffs' motion, Defendants have raised the often perplexing question of the nature of the "representational responsibilities" of a class representative and who can serve in that capacity. Defendants have vigorously challenged the qualifications of the named Plaintiffs, including two former Plaintiffs who withdrew as named Plaintiffs, to serve as class representatives. In mounting this attack, Defendants have also called into question the conduct of class counsel in bringing these actions, suggesting that the named Plaintiffs are the mere "stalking horses" of counsel, and that counsel are the "real parties in interest" in this litigation. Defendants' concerns about the adequacy of class representation amount to little more than a parade of horribles about how and why this litigation began. There need only be one class plaintiff to represent a class and Plaintiffs have identified at least one member of the class, Jerry Enterprises of Gloucester County, Inc., who can adequately perform that task. Accordingly, for the reasons set forth below, Plaintiffs' motion for class certification will be granted.

## I. Facts and Procedural History

On May 21, 1996, 1501 Licensing Corporation ("1501 Licensing"), a New Jersey Corporation with its principal place of business in Neptune, New Jersey, filed a Complaint against Defendants, The Baxter Group, Inc., Majestic Wine & Spirits, Flagstaff Distributors, Banner Distributors, Joseph H. Reinfeld Distributors, F & A Distributing Co., Inc., Merchants' Wine & Liquor Co., Fedway Associates, Inc., Federal Wine & Liquor Co., Perrone Wine & Spirits, Inc. d/b/a Gateway–Perrone Distributors, Capital Wine & Spirits Co. d/b/a Jersey National Capitol Wine & Liquor, Co., the Jaydor Corporation, J & J Distributing Co., International Vintners, Dorchester, Inc., Hoffman Import and Distribution, R & R Marketing, L.L.C., Reitman Industries, and Royal Distributors and Importers, Inc. The centerpiece of their allegations was the factual contention that these Defendants conspired to fix, maintain, and stabilize the price of distilled alcoholic beverages in an unreasonable restraint of trade and commerce, in violation of both section 1 of the Sherman Act, 15 U.S.C. § 1, and the New Jersey Antitrust Act, N.J.S.A. §§ 59:9–1 *et seq. See 1501 Licensing Corp. v. F & A Distributing Co., Inc., et al.,* Civil Action No. 96–2347, Complaint ¶ 35 (dated May 21, 1996) (hereinafter the *1501 Licensing* action or *1501 Licensing* ).

About three weeks later on June 11, 1996, a nearly identical class action complaint was filed on behalf of Temps, Inc. ("Temps"), a New Jersey corporation with its principal place of business in Seaside Heights, New Jersey. *See Temps, Inc. v. F & A Distributing Co., Inc.,* Civil Action No. 96–2789, Complaint (dated June 6, 1996) (hereinafter the *Temps* action or *Temps* ). On July 3, 1996, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, the two actions were consolidated for all purposes. *See 1501 Licensing,* Stipulation & Order (dated July 3, 1996).

On July 16, 1996, then-Plaintiffs, 1501 Licensing and Temps, applied for an order to

show cause and moved for a preliminary injunction restraining Defendants from, *inter alia,* retaliating and discriminating against 1501 Licensing and Temps in the sale of distilled alcoholic beverages. The order to show cause was adjourned without date on July 26, 1996.[1]

On August 22, 1996, an Amended Complaint was filed in the *1501 Licensing* action, adding Tagco, Inc. ("Tagco") and Jack N. Bill's, Inc. ("JNB"), as Plaintiffs, and adding Allied Beverage Group, L.L.C. ("Allied") as Defendant. *See 1501 Licensing,* Amended Complaint ¶¶ 5(c–d), 31 (dated Aug. 22, 1996). Allied moved to dismiss the Amended Complaint for failure to state a claim and, on February 7, 1997, I denied that motion. *See 1501 Licensing,* Opinion at 7 (dated Feb. 7, 1997). In the meantime, a Second Amended Complaint was filed, adding Chefs International, Inc. ("Chefs") and Jerry Enterprises of Gloucester County ("Jerry Enterprises") as Plaintiffs. *See 1501 Licensing,* Second Amended Complaint ¶ 5(e–f) (dated Dec. 5, 1996) (hereinafter Second Amend. Compl.).

The Second Amended Complaint repeats the "centerpiece" allegations of the Complaint: that Defendants, distributors of, *inter alia,* distilled alcoholic beverages, "substantially control and dominated the ... market for ... wholesale distribution of distilled alcoholic beverages" in New Jersey, *id.* at ¶ 36; that Defendants engaged in a "conspiracy, the purpose and effect of which was to fix, maintain, and stabilize the price of distilled alcoholic beverages [unreasonably]," *id.* at

1. While the motion for a preliminary injunction was never formally withdrawn, the issues raised by that motion were, as a practical matter, resolved during the course of pre-trial proceedings in these cases.

2. On November, 15, 1996, yet another Complaint was filed on behalf of Chefs alleging the same causes of action against the Defendants as the original March 21, 1996, *1501 Licensing* Complaint. *See Chefs International, Inc., et al. v. F & A Distributing Co., Inc.,* Civil Action No. 96–5459, Complaint (dated Nov. 15, 1996). This action was voluntarily dismissed by Chefs on April 28, 1997, without the Defendants having moved, answered, or otherwise responded.

3. It appears that Plaintiffs' moving papers in support of their motion for class certification were originally to have been filed on behalf of 1501 Licensing, Temps, Tagco, JNB, and Chefs.

¶ 37. As an example of the allegedly collusive price fixing scheme of Defendants, Plaintiffs point to the "lockstep" fashion in which Defendants' prices moved and allege that this pattern is not coincidental. *See id.* at ¶¶ 39–45 (describing required "blind" filing of current price list with state authorities and remarkable concurrence of prices across distributors).[2]

On February 11, 1997, Robert D. Dubin d/b/a INT Lands II, Inc. t/a Caesar's Lounge & Liquors ("Dubin"), represented by a set of lawyers completely different from those representing the *1501 Licensing* Plaintiffs, filed a Complaint alleging substantially similar causes of action against Defendants. *See Robert D. Dubin d/b/a INT Lands II, Inc. t/a Caesar's Lounge & Liquors, et al. v. Allied Beverage Group, Inc., et al.,* Civil Action No. 97–782, Complaint (dated Feb. 11, 1997) (hereinafter the *Dubin* action).

On March 6, 1997, Magistrate Judge Rosen granted the motion of Plaintiffs, 1501 Licensing and Temps, for leave to withdraw. *See 1501 Licensing,* Order (dated March 7, 1997). Finally, on April 25, 1997, Magistrate Judge Rosen consolidated the *1501 Licensing* action and the *Dubin* action. *See 1501 Licensing,* Order of Consolidation (dated Apr. 25, 1997). Throughout the remainder of this Opinion, I shall refer to the consolidated actions collectively as *Jerry Enterprises of Gloucester County, Inc., et al. v. F & A Distributing Co., Inc., et al.* or the *Jerry Enterprises* action.[3]

*See* Memorandum of Law in Support of Plaintiffs' Motion for Class Certification 1 n. 1 (dated Oct. 1, 1996) (hereinafter Plaintiffs' Memorandum); *1501 Licensing,* Pretrial Order No. 1 at 4 (dated Sept. 25, 1996). After Plaintiffs' preparation of the initial memorandum in support of the class certification motion, but before the filing of their reply brief, a substantial period of time, 1501 Licensing and Temps withdrew from the action, Jerry Enterprises came into the action, and Dubin commenced an action has been consolidated with the *1501 Licensing* action. Attorneys for Plaintiffs orally confirmed to the Court that the motion for class certification should now be read to include Dubin and, presumably, Jerry Enterprises, as proposed class representatives. *See also* Plaintiffs' Reply Memorandum in Support of their Motion for Class Certification 12–14, 20–21, 29–31 (dated July 30, 1997) (hereinafter Plaintiffs' Reply Memorandum). Defendants have clearly so read the motion, *see, e.g.,* Defen-

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs have now moved for certification of a class consisting of all wholesale purchasers in the State of New Jersey of distilled alcoholic beverages from any Defendant, or any subsidiary or affiliate of any Defendant, at any time during the period from May 1, 1992, through and including July 31, 1996, excluding governmental entities, Defendants, subsidiaries and affiliates of Defendants, and other unnamed distributors of distilled alcoholic beverages and their subsidiaries and affiliates. *See* Second Amend. Compl. at ¶ 49; *but see* Plaintiffs' Memorandum at 1 (arguing for class period "from May 1, 1992, through and including *April 30, 1996* ") (emphasis added). The Court may properly exercise jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367.

## II. Discussion

Rule 23(b) sets forth four general prerequisites for the maintenance of a class action:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law of fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In addition, Rule 23(b) envisions the maintenance of class actions under one of three possible subsections. Plaintiffs have opted to move for class certification pursuant to Rule 23(b)(3) which requires that:

the court find[ ] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed R.Civ.P. 23(b)(3); *see* Plaintiffs' Memorandum at 8, 14–19. Rule 23(b)(3) also sets forth a non-exhaustive list of factors pertinent to the court's analysis of the predominance and superiority criteria, among them, the interest of the members of the class in individually controlling the prosecution or defense of separate actions and the "difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3)(A), (D). *See generally Amchem Prod., Inc. v. Windsor,* —— U.S. ——, ——–––——, 117 S.Ct. 2231, 2245–47, 138 L.Ed.2d 689 (1997) (describing basic mechanism of (b)(3) class actions).

 In general and except to the extent suggested below, *see* II.A .4, *infra,* a plaintiff bears the burden of showing that the proposed class action satisfies the requisites of Rule 23(a) and the conditions of Rule 23(b), in this case Rule 23(b)(3). *See, e.g., Stephenson v. Bell Atl. Corp.,* 177 F.R.D. 279, 283–84 (D.N.J.1997); *Stadler v. McCullouch,* 949 F.Supp. 311, 314 (E.D.Pa.1996). While the merits of a putative class action's factual and legal substantive allegations should not factor into the decision regarding class certification, the court should "rigorous[ly] analy[ze]" the allegations of the complaint relating to the maintainability of the action as a class action. *General Tele. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982); *see, e.g., Stephenson,* 177 F.R.D. at 283–84; *Burkhalter Travel Agency v. MacFarms Int'l, Inc.,* 141 F.R.D. 144, 152 (N.D.Cal.1991). With these standards in mind, I now turn to the requirements of Rule 23.

### A. Rule 23(a) Prerequisites

#### 1. Numerosity

Plaintiffs allege that the customers of Defendants, excluding those not part of the proposed class, number in the thousands, and that, because the members of the class are so numerous, the joinder of all class members is impracticable. Second Amend. Compl. at ¶ 49. Defendants do not suggest otherwise and indeed, agreed that they would not contest certification of the class based on numerosity. *See 1501 Licensing,* Pretrial Order

dants' Brief in Opposition to Plaintiffs' Motion for Class Certification 12–13, 22, 29–31 (dated July 31, 1997) (hereinafter Defendants' Brief); Defendants' Sur-reply Brief in Opposition to

Plaintiffs' Motion for Class Certification 7–8 (dated Sept. 11, 1997) (hereinafter Defendants' Surreply), as does the Court.

No. 1 at 3. Given the very large number of class members and the likelihood that each class member's individual claims involve only a relatively small amount of damages, joinder is clearly impracticable. *See generally* 5 James Wm. Moore, et al., *Moore's Federal Practice* § 23.22[3] at 23–63 to 23–68, 23–71 to 23–72 (3d ed.1997). The numerosity requirement of Rule 23(a) is thus satisfied.

### 2. Commonality

The question of law or fact common to all members of the proposed class relates to, at the very least, the alleged conspiracy by Defendants to fix prices in the market for distilled alcoholic beverages in New Jersey. Indeed, the existence, scope, duration, effect, and ultimately, the legality, of the alleged conspiracy would appear, at this point, to be the overwhelming centerpiece of this litigation. *See generally* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 18.25 at 18–81 (3d ed.1992) (noting that "common issues such as conspiracy or monopolization have, almost invariably, been held to predominate over individual issues."); 5 *Moore's Federal Practice* § 23.23[5][a]. The commonality requirement of Rule 23(a) is clearly satisfied, and Defendants have not contested otherwise.

### 3. Typicality

█ Claims are typical when "the legal theories of the class representative [do not] conflict with those of the absent class members." 5 Moore's Federal Practice § 23.24[1]. Certainly, as in this case, when "the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members" (in this case, the alleged conspiracy to fix distilled liquor prices), "and if it is based on the same legal theory," *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 57–58 (3d Cir.1994) (noting that "typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based' ") (quoting *Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir.1988)), the typicality requirement is easily satisfied. Defendants have not argued otherwise, for example, by showing that there are unique defenses with respect to the claims of the entities who I consider [an] adequate class representative[s], *see* II. A.4, *infra,* and the typicality requirement is deemed satisfied.

### 4. Fair and Adequate Representation

The main thrust of Defendants' arguments relate to the fair and adequate representation prong of Rule 23(a). They assert at great length that the proposed representatives of the class cannot fairly and adequately represent the class.

I note, first, that there appears to be some disagreement about whether it is the burden of the party seeking certification, normally, a plaintiff, to show that that party will fairly and adequately represent the class or whether it is the party opposing certification who must demonstrate the inadequacy of the proposed class representative. *See Cichonski v. American Inventors Corp.,* 1995 WL 657107, *6 n. 4 (E.D.Pa. Nov.3, 1995) (noting disagreement); 5 *Moore's Federal Practice* § 23.25[3][c] at 23–116 nn. 13–14; 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 1765 at 274–76 n. 29 (2d ed.1986); 3 *Newberg on Class Actions* § 7.24 at 7–81 (noting that "the burden shifts to the defendant once the plaintiff has made a prima facie showing of adequate representation in its complaint"); *see, e.g., Morel v. Giuliani,* 927 F.Supp. 622, 633 (S.D.N.Y.1995) (plaintiffs' burden to show their capability of adequate representation); *McGlothlin v. Connors,* 142 F.R.D. 626, 633–34 (W.D.Va.1992) (burden on defendants to establish inadequate representation of class counsel).

Second, the parties disagree about the extent to which evaluation of the class representatives is part of the "adequate representation" inquiry under Rule 23(a)(4), or whether the inquiry involves only considerations of any conflict between the class representatives and absent members of the class and the experience of class counsel. *Compare, e.g.,* Plaintiffs' Reply Memorandum at 3–6 with Defendants' Brief at 16–20; *see, e.g., Amchem,* —— U.S. at —— – —— & n.

20, 117 S.Ct. at 2250–51 & n. 20 (noting that adequacy of representation requirement may merge with commonality and typicality criteria and that adequacy also factors in competency and conflicts of class counsel); *In re Gen'l Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784–85 (3d Cir.1995) (Becker, J.) (noting roles of "appropriate representative plaintiffs" and court in continuously monitoring class counsel in order to protect absent class); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077–78 (2d Cir.1995) (Kearse, J.) (noting that court, class counsel, and class representatives all have continuing duty to protect absent class members); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727–28 (11th Cir.1987) (perceived lack of subjective interest in litigation on part of named plaintiffs is not sufficient to deny class certification "unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case"), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988); *Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir.) (holding that the "adequacy-of-representation test is not concerned whether plaintiff personally derived the information pleaded in the complaint or whether he will personally be able to assist his counsel"), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *Stadler*, 949 F.Supp. at 314; *Gunter v. Ridgewood Energy Corp.*, 164 F.R.D. 391, 396 (D.N.J. 1996) (evaluating personal involvement in litigation on part of proposed class representatives); *Beck v. Status Game Corp.*, 1995 WL 422067 (S.D.N.Y. July 14, 1995) (noting that court must determine whether proposed class representative is "simply lending his name to a suit controlled entirely by the class attorney"); *Lewis v. National Football League*, 146 F.R.D. 5, (D.D.C.1992) (noting that Rule 23(a)(4) does not require extensive knowledge of litigation on part of class representatives); *Kelley v. Mid–America Racing Stables, Inc.*, 139 F.R.D. 405, 409–10 (W.D.Okla.1990) (denying class certification where class representative had little knowledge of and involvement in action and, consequently, had surrendered control to class attorney); *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 407–08 (D.N.J.1990)

(noting that "vigorous prosecution" of class representatives measures in terms of skill and experience of counsel); *In re Western Union Sec. Litig.*, 120 F.R.D. 629, (D.N.J. 1988) (Gerry, C.J.) (noting trend towards "assessing adequacy of representative's attorney rather than the personal qualifications of the named plaintiff"); *Jackshaw Pontiac, Inc. v. Cleveland Press Pub. Co.*, 102 F.R.D. 183, 191–92 (N.D.Ohio 1984) (requiring reasonable knowledge of litigation on part of class representative); *Efros v. Nationwide Corp.*, 98 F.R.D. 703 (S.D.Ohio 1983); *Peil v. National Semiconductor Corp.*, 86 F.R.D. 357, 366 (E.D.Pa.1980) (noting court's role in protecting class where class representatives are exercising excessive discretion).

These disputes are of little moment because, even if Plaintiffs have the burden of proof, a legal proposition about which I have some doubt, and even if inquiries into the personal characteristics of Plaintiffs and their knowledge of the litigation were proper, a legal proposition about which I have little doubt, Plaintiffs have shown that there is at least one named Plaintiff who will fairly and adequately represent the class. This is sufficient and the Court need not evaluate whether the other named Plaintiffs will fairly and adequately represent the class. *See Grasty v. Amalgamated Clothing & Textile Workers Union, AFL—CIO*, 828 F.2d 123, 128 (3d Cir.) (holding that "in most cases as long as one of the representatives is adequate, the adequacy of representation requirement is met"), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988); *see, e.g., Stephenson*, 177 F.R.D. at 286–87; *Brown v. LaSalle Northwest Nat'l Bank*, 1993 WL 313563, *4 (N.D.Ill.1993); *Gillis v. Hoechst Celanese Corp.*, 1992 WL 68333, *7 (E.D.Pa. Apr. 1, 1992), *rev'd in part on other grounds*, 4 F.3d 1137 (3d Cir.1993), *cert. denied*, 511 U.S. 1004, 114 S.Ct. 1369, 128 L.Ed.2d 46 and 511 U.S. 1031, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994); 5 *Moore's Federal Practice* § 23.25[f] at 23–144; 7A *Federal Practice & Procedure: Civil* § 1765 at 277–278 & n. 34. Accordingly, the fair and adequate representation prong is satisfied.

A thorough review of the entire deposition of Gerald T. Skelly, Jr. ("Skelly"), the sole

owner of proposed class representative, Jerry Enterprises, which trades as Heights Liquor Outlet, *see* Certification of Robert A. Hoffman (dated July 30, 1997) (hereinafter Hoffman Certif.), Exh. A, not the misleadingly selective portions attached by Defendants, *see* Certification of Harvey C. Kaish (dated July 11, 1997), Exh. H,, confirms that he has more than sufficient knowledge of the litigation to satisfy his "representational responsibilities," *Amchem,* —— U.S. at ——, 117 S.Ct. at 2251, under Rule 23(a)(4).

At Skelly's deposition, when counsel for one of the Defendants asked him about the nature and source of the allegations of price fixing, Skelly, summarizing the gist of Plaintiffs' allegations, succinctly and thereafter on numerous occasions, expressed his belief that "the wholesalers get together and fix prices. They establish a stationary—a standard pricing for all or a majority of the products that they sell." Exh. A at 12; *see also id.* at 13 ("the rumor is that the wholesalers have gotten together and they have established pricing so that none of ... each other [sic] wholesaler would be damaged"), 47 (deponent asserted that he used the term price-fixing independently not because "that's what [he'd] been told"), 48, 57. Further, he specified the source of this belief: rumor, "strong suspicion," general acceptance among those at his level of the industry, inferences from daily observations of the pricing information submitted by the wholesalers to the state, and conversations with salesmen. *See, e.g., id.* at 13, 50–51, 53–54, 62–65, 76–78, 81–82, 85–87, 93. He further noted, quite sensibly, that it would have been a "foolish thing" for any wholesaler to tell him about their conspiracy to fix prices, *id.* at 14; *see also id.* at 67, reflecting the proposition that, generally, proof of a conspiracy is not usually found in the possession of the victims of the conspiracy. *See, e.g., 1501 Licensing,* Opinion at 5. Skelly was aware of the other Plaintiffs in the action. *Id.* at 28. Also, Skelly was not, in general, misled by counsel's questions into thinking that the complaint's allegations of price-fixing involved wine or beer, or into expanding far beyond his original definition of the price-fixing scheme. *Id.* at 33–34, 48, 49, 51, 89, 94–96. Nor did Skelly have any problems when Defendants' counsel quizzed

him on the names of the many Defendants in this case and their relation to the New Jersey liquor market as a whole. *Id.* at 43–44, 46; *see also id.* at 57–58. Skelly also gave detailed answers to counsel's questions regarding which liquors had some price variation during the class period and which did not. *Id.* at 51–53. Far from being uninformed about the case, Skelly was quite aware of more than its basic contours.

The most serious problems Defendants point to with respect to Skelly's putative representation of the class are the assertions that Skelly had not completely read the complaint before joining the action, that he had not read it completely, as of March 4, 1997, Defendants' Brief at 14, 22, and that Jerry Enterprises "was apparently ready to lend his [sic] name to any suit against the wholesalers, since he 'was interested' in joining the suit before he even knew what it was about." *Id.* at 21; *see also id.* at 12. As to the assertion charging Skelly with lending the name of his business to any action, it is quite clear that when he stated he was "interested," Skelly was not expressing a desire to participate in any action without knowing its purpose or nature; such an interpretation of his deposition testimony would be unreasonable. Indeed, it appears clear from his deposition testimony that it was only after being connected with his attorneys through various intermediaries, associates and business acquaintances, meeting with his attorneys, and learning of the subject matter of the lawsuit, that Skelly agreed to participate. *Id.* at 73–76.

As to the assertion regarding Skelly's knowledge of the complaint in this action, it is abundantly clear from Skelly's deposition testimony that he had looked at it on numerous occasions, *id.* at 9, 43, even if he has not "read it a hundred percent," *id.* at 43. More importantly, as a practical matter, Skelly's understanding of what is alleged in the complaint is relatively comprehensive, and the theories alleged by Skelly and the complaint are largely coterminous. The suggestion that he does not understand the complaint, both the facts alleged and the legal theories articulated in support of those allegations, to the point that he would not be able to repre-

sent the class fairly and adequately is not credible, if not utterly without support in the record.

As to the assertion regarding Plaintiffs' lack of knowledge of the conspiracy, the existence or non-existence of the conspiracy is a fact which ultimately will be proven or disproven at trial. Moreover, as Plaintiffs point out, there is almost no reason to think that Plaintiffs would have personal knowledge of the conspiracy. *See* Plaintiffs' Reply memorandum at 8; *see* Hoffman Certif., Exh. A at 14. It is obvious that those who conspire to violate the antitrust laws do not generally make their intentions public.

Finally, as to Defendants' argument that "none of the [P]laintiffs really had a complaint about the pricing practices of the defendants prior to the institution of litigation," Defendants' Brief at 20, Defendants' concerns, even if they were true—and it is not clear that they are, *see, e.g.,* Exh. A at 51–52—are wholly misguided. First, it is simply no surprise that Plaintiffs, not educated in substantive or procedural aspects of the law, would not know that they either had potential claims against Defendants. Second, it is not surprising that Plaintiffs would not comprehend that their potentially minuscule claims could be realistically aggregated with other similarly sized claims and prosecuted through the mechanism of a class action. While plaintiffs in general, and personal injury plaintiffs in particular, are often criticized in the public media as being overly litigious, it is ironic that Defendants should suggest that this class action should not proceed because the named Plaintiffs are not *sufficiently* litigious. In either case, a lack of *ex ante* "claims consciousness" does not demonstrate Skelly's inadequacy as the class representative.

■ Furthermore, Defendants' memoranda obscure the relationship between "claims consciousness" and the size of the claim in the class action context. It must be understood that a class action plaintiff may not have very much incentive to contact an attorney or to investigate a potential claim where the claim may be tiny. Nor does a plaintiff have very much incentive to learn about the nature of the litigation with which he or she gets involved. The whole mechanism of the class action recognizes this lack of incentive and the collective action problems inherent in many individuals having potentially small claims, and encourages lawyers to prosecute these actions on behalf of plaintiffs by holding out the promise of large fee awards. *See, e.g., Gen'l Motors,* 55 F.3d at 801–03.

Failing to understand this, Defendants express horror and disgust with the genesis of this litigation. The sordid tale they dramatically and artfully describe, however, is, on the record before me, substantially overblown. While the relationship between the class Plaintiffs initially named, Temps and 1501 Licensing, and an associate at Barrack, Rodos & Bacine, may not have been conventionally initiated, it does not appear that any Rule of Professional Conduct was violated. Furthermore, even if any was violated and without intimating an opinion as to what range of actions could be taken by a court in such a situation, the Court would be very wary of refusing to certify a class where, as in this case, the allegedly improperly initiated attorney-client relationship involves entities or individuals who are no longer parties to the litigation. This is not to say that where, for example, an attorney and an improperly solicited client collusively began such an action, knowing full well that the client would withdraw once additional named Plaintiffs joined the action, the Court would not consider the imposition of a more drastic sanction, such as disqualifying the attorney. Such behavior could conceivably poison an attorney's representation of the class. On the record before me, however, it does not appear that any ethically improper conduct or collusion took place, and Defendants' concerns do not compel the finding that Jerry Enterprises is not an adequate class representative.

In short, Plaintiffs have shown clearly and convincingly, on the record before me and at this point in the litigation, that Jerry Enterprises, through its sole owner, Skelly, has the ability, interest, incentive, and knowledge to prosecute the claims of the class vigorously, fairly, and adequately to represent the interests of the class.

Finally, because Defendants have not pointed to any conflicts between Jerry Enterprises and the other members of the class, and because the law firms of Barrack, Rodos & Bacine; Fine, Kaplan & Black; and Freedman, Boyd, Daniels, Hollander, Guttman & Goldberg, P.A.[4] appear, from their firm resumes, to possess the competence, skill, and experience necessary to the prosecution of the class claims, all elements of the adequacy of representation prerequisite have been satisfied.[5]

## B. Rule 23(b)(3) Findings

### 1. Predominance of Common Questions

The "predominance" inquiry focuses on the number and significance of common questions as opposed to individual issues. Except for the issue of the amount, if any, of damages, there would not appear to be very many, if any, individual issues, and certainly none which is more central to the litigation than the question of the alleged conspiracy to fix prices. *See, e.g., Gen'l Motors*, 55 F.3d at 817; *see generally* 5 *Moore's Federal Practice* §§ 23.46[2][a] at 23–208 (noting that courts generally find predominance where individual proof of damages exist, but do not predominate over questions of liability), 23.47[3][a] at 23–236 to 23–239 (noting that "class action is considered … a particularly appropriate method for the litigation of antitrust actions alleging a price-fixing conspiracy"). Defendants have not argued that individual issues predominate over common issues, and, accordingly, I find that questions of law and fact common to the members of the class predominate over any questions affecting only individual members.

### 2. Superiority of Class Action

Defendants have not suggested the existence of an alternative method of adjudicat-

ing the question of price-fixing within the New Jersey market for distilled alcoholic beverages. Indeed, the prospect of numerous individual lawsuits alleging the same conspiracy is extremely unlikely, in light of the fact that there does not appear any interest of the members of the class in individually controlling a separate action. Nor do there appear to be any difficulties likely to be encountered in the management of this action as a class action. Accordingly, I find that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## III. Conclusion

For the reasons set forth above, Plaintiffs' motion for class certification will be granted. I will order that the following class be certified: all wholesale purchasers in the State of New Jersey of distilled alcoholic beverages from any Defendant, or any subsidiary or affiliate of any Defendant, at any time during the period from May 1, 1992, through and including July 31, 1996, excluding governmental entities, Defendants, the subsidiaries and affiliates of Defendants, and other unnamed distributors of distilled alcoholic beverages and their subsidiaries and affiliates.

Counsel should contact Magistrate Judge Rosen as soon as possible to schedule a conference to discuss the issue of notice pursuant to Rule 23(c)(2).

## ORDER

This matter having come before the Court on the motion of Plaintiffs, Jerry Enterprises of Gloucester County, Inc., Tagco, Inc., Jack N. Bill's, Inc., Chefs International, Inc., and Robert D. Dubin, for an order certifying a class of all wholesale purchasers in the State of New Jersey of distilled alcoholic beverages from any Defendant, or any subsidiary or affiliate of any Defendant, at

---

4. I have made this point with respect to the Barrack, Fine, and Freedman firms. Mr. Cohen, Mr. Bryers, Mr. McCarthy, and Mr. Steinberg cannot, at this point, be deemed to have the requisite experience in conducting complex antitrust class action litigation because they simply have never argued that they had such experience, for example, by submitting their firm resumes for consideration. This is completely independent of the fact that Defendants never challenged the

ability of Plaintiffs' counsel to represent competently the interests of the class.

5. Because Jerry Enterprises is an adequate representative of the class, I need not address any other issues raised with respect to other potential class representatives. *See Grasty*, 828 F.2d at 128.

any time during the period from May 1, 1992, through and including July 31, 1996, excluding governmental entities, Defendants, the subsidiaries and affiliates of Defendants, and other unnamed distributors of distilled alcoholic beverages and their subsidiaries and affiliates, Robert A. Hoffman, Esq., Leonard Barrack, Esq., Steven A. Asher, Esq., and Anthony J. Bolognese, Esq. of Barrack, Rodos & Bacine, Allen D. Black, Esq. and Donald L. Perelman, Esq. of Fine, Kaplan & Black, and Joseph Goldberg, Esq., of Freedman, Boyd, Daniels, Hollander, Guttman & Goldberg, P.A., William J. Bryers, Esq., Jay S. Cohen, Esq., John Philip McCarthy, and Philip A. Steinberg, Esq. appearing on behalf of Plaintiffs, and William J. O'Shaughnessy, Esq. and Harvey C. Kaish, Esq. of McCarter & English appearing on behalf of Defendants, Fedway Associates, Inc., Federal Wine & Liquor Co., Perrone Wine & Spirits, Inc., and Capital Wine & Spirits Co., Justin P. Walder, Esq. and Thomas J. Spies, Esq. of Walder, Sondak & Brogan, P.A. appearing on behalf of Defendants, The Baxter Group, Inc., Majestic Wine & Spirits, Flagstaff Distributors, Banner Distributors, and Joseph H. Reinfeld Distributors, Edward G. D'Alessandro, Esq. of D'Alessandro & Jacovino, Esqs. appearing on behalf of Defendants, F & A Distributing Co., Inc., Merchants' Wine & Liquor Co., R & R Marketing, L.L.C., Allied Beverage Group, L.L.C., and Royal Distributors & Importers, Inc., Richard K. Coplon, Esq. of Hellring, Lindeman, Goldstein & Siegal appearing on behalf of Defendants, The Jaydor Corporation, J & J Distributing Co., International Vintners, Dorchester, Inc., and Hoffman Import and Distribution, Douglas S. Eakeley, Esq. of Lowenstein, Sandler, Kohl, Fisher & Boylan, P.C. appearing on behalf of Defendants, R & R Marketing, L.L.C. and Reitman Industries, and Andrew E. Anselmi, Esq. of McCusker, Anselmi, Rosen & Carvelli appearing on behalf of Defendants, R & R Marketing, L.L.C. and Reitman Industries; and

The Court having considered the briefs, memoranda, certifications, and exhibits submitted by the parties; and

For the reasons set forth in an OPINION filed concurrently with this ORDER,

IT IS HEREBY ORDERED on this 23rd day of February, 1998, that Plaintiffs' motion for certification of their claims as a class action, as alleged in the Second Amended Complaint, dated Dec. 5, 1996, is GRANTED; and

IT IS FURTHER ORDERED that the following class be CERTIFIED: all wholesale purchasers in the State of New Jersey of distilled alcoholic beverages from any Defendant, or any subsidiary or affiliate of any Defendant, at any time during the period from May 1, 1992, through and including July 31, 1996, excluding governmental entities, Defendants, the subsidiaries and affiliates of Defendants, and other unnamed distributors of distilled alcoholic beverages and their subsidiaries and affiliates.